CITED *in Moore* v. *Wilson,* 4 *Harr.* 187; *State* v. *Holmes,* 7 *Vr.* 64.

---

## HOPKINS ET AL. v. CHANDLER

In case. On motion to amerce the Sheriff of Essex.

A Sheriff is not, by a levy and sale, estopped from denying the plaintiff's right to the proceeds of sale; nor from showing that the property sold under plaintiff's execution, was not the defendant's, nor liable to such levy and sale.

*H. W. Green,* in support of the motion.

*I. H. Williamson,* contra.

STATE OF THE CASE. On the 19th Nov. 1838, the execution in the above entitled cause, was delivered to the Sheriff. He then had

in his hands, four other executions; two of which had been delivered to him on the 8th of December, 1837, and the other two, on the 5th of September, 1838. These two last mentioned executions were at the suit of Stephen Roff, against the above named defendant, Chandler, together with William Stevens and Isaac Ward who, with Amzi Dodd, before then dec'd. were his securities to Roff, as hereinafter mentioned.

These several executions had, as they came into the hands of the Sheriff, been levied upon sundry goods and chattels of the defendant Chandler, and upon certain lease-hold property in the city of Newark. These premises had been purchased by Chandler on or about the 22d of November, 1837, of Stephen Roff, together with a quantity of furniture; for which, there remained due to Roff, on that day, the sum of $6,500, and to secure the payment of which, Amzi Dodd, William Stevens and Isaac Ward gave their bonds or other securities to Roff.

To secure and indemnify the said Dodd, Stevens and Ward, who had thus become bound for him, Chandler by deed bearing date the 22d November, 1837, mortgaged to them, the said leasehold premises, together with the said furniture, an Inventory of which is annexed to the mortgage, with a *proviso*, that the same should be void, if he should pay and satisfy to Stephen Roff, the said debt, on or before the 1st day of April, 1839. By the terms of this mortgage, Chandler was to retain possession of the mortgaged property, until default should be made in the performance of the proviso or condition aforesaid, unless the mortgagees should, previous to that event, demand and take possession thereof. This mortgage was recorded in the Clerk's office of Essex county, on the 12th day of June, 1838.

On the 28th December, 1838, William Stevens and Isaac Ward, who had survived Amzi Dodd, executed an instrument, in which, after reciting the aforesaid mortgage, and that Chandler had delivered up to them, upon demand, the possession of the said leasehold premises, with the goods and chattels, they leased the same to him for the term of six months from that day, at the rent of one dollar, payable at the termination of that lease, subject nevertheless to a determination thereof by the death of said Chandler, or upon the tender to him, of fifty cents, with intent to determine said lease.

Hopkins et al. v. Chandler.

On the 27th of March, 1839, Stevens and Ward served a written notice on the Sheriff, that the leasehold premises and the goods and chattels levied on by him, had been assigned to them by Chandler, and forbidding the Sheriff to sell the same or any part thereof, for any purpose except to pay such of the executions in his hands as were for the debt due from Chandler to Roff, and for the payment of which, they were liable as aforesaid.

Nothwithstanding this notice, the Sheriff on the 9th day of April, 1839, proceeded to sell all the said property, under and by virtue of all the said executions. The leasehold premises sold for the sum of $4,300; the personal property, for $134.01; making in the whole $4,434.01, which sum, after deducting rent due on the lease, and the sheriff's fees, was sufficient to satisfy all the aforesaid executions, but not enough to pay them and also the money due to Roff, and for which, Stevens and Ward were security. aforesaid.

The proceeds of the sale were applied in the first place to the satisfaction of the two executions which were delivered to the Sheriff on the 8th December, 1837. In the next place a portion of the proceeds of the sale, was applied to pay off the two judgments in favor of Roff, which were for portions of the debt secured in manner aforesaid, by Stevens and Ward; leaving a balance in the hands of the Sheriff, sufficient to satisfy the plaintiffs in this action, whose execution came last into the hands of the Sheriff. But the Sheriff declines paying the money to the plaintiffs, without the order of the court, as it is claimed by Stevens and Ward; and by an arrangement between the parties, the money has been brought into court, to abide its decision.

HORNBLOWER C. J. The dispute in this case, is really between Hopkins and Hawley the plaintiffs in execution, and Stevens and Ward, who were sureties for Chandler. The former claiming this money as the proceeds of a sale by the Sheriff, under their execution, and the latter as money which arose upon a sale by the Sheriff, of property belonging to them, and which the Sheriff had no right to sell under the plaintiff's execution.

Admitting the fairness of the transaction disclosed by the documents and proofs in this case, and I know of no reason to

doubt it, Stevens and Ward, were the bona fide assignees of the property, and in possession of it as landlords of Chandler, for the purpose of enabling them to pay a large debt due from Chandler to Roff, and for which, they were securities to the latter.

Nevertheless, their counsel admitted on the argument, that it was liable to the first two executions. The next two executions being against Chandler and themselves for portions of the debt for which they had become security, the Sheriff had a right, with or without their consent, to levy upon and sell the property in question to satisfy those executions. This, Stevens and Ward did not deny; but they gave notice to the Sheriff not to sell any of the property, except for the purpose of paying the executions in favor of Roff, against Chandler and themselves. The Sheriff however, had previously levied all five of the executions, upon all the property, in the order in which they had come to his hands; and notwithstanding the notice given him by Stevens and Ward, he advertised and actually sold under all the executions; so that the money now in the Sheriff's hands, (or in court,) was raised in point of fact, upon a sale under the execution of these plaintiffs. It comes then to this question : Can a Sheriff after levying upon property and selling it under an execution, withhold the money from the plaintiff, and successfully resist an amercement for not paying it over; upon the ground, that the property levied upon and sold by him, belonged to other persons than the defendant, and were not liable to the plaintiff's execution?

An amercement comes in the place of an action at law for money had and received, and if in such an action, the facts stated in this case, were clearly proved or admitted, we should have no difficulty perhaps in saying the plaintiffs ought not to recover. It would seem to be unreasonable, if a Sheriff, by mistake should sell property not liable to a plaintiff's execution, that he should be compelled to pay the money to the plaintiff, and be left to respond to the owner of the property. And upon this view of the subject, there would seem to be no good reason, why in a plain case, such as this strikes me to be, we should not upon a motion for amercement, make a similar decision. In settling priorities between execution creditors, we have frequently, as in the cases of *Matthews* v. *Warner*, 6 *Halst.* 295; and *Williamson* v. *John-*

*ston*, 7 *Halst.* 86, gone into evidence upon questions of fraud, and settled the rights of parties upon facts *dehors* the record.

This however is not a question of priority, there is in this case, no dispute between the judgment creditors; nor are we called upon to dispose of, or settle the right to surplus money, between contending creditors. It involves simply a question whether the Sheriff having raised the money on the plaintiff's execution, must not pay it over to him, or be amerced. It is true in settling that question we must not only decide the abstract legal question, whether the Sheriff can be admitted to such a defence as is set up for him here : but if he can, then we must also determine all the matters of fact upon which that defence is rested, which it is true, may lead us into an inquiry not only of the bona fides of various transactions between other parties, but into titles and ownership of property. Nevertheless, since the court has power of deciding both law and fact, on a rule to show cause, or to order a feigned issue, (*Per* Ford, J. in *Matthews* v. *Warne*, 6 *Halst. R.* 311.) I do not see why, upon this motion to amerce the Sheriff, which is in the nature of a rule to show cause, or rather of a trial by the court, we may not decide the whole matter according to the rights of the parties.

The objection, that this mode of proceeding will have a tendency to draw into this court, the trial of titles to property seized in execution, is not so formidable as struck me at the first view. The circumstances of this case, were peculiar, and not such as are likely to happen often, if ever, again. The property in this case, although claimed by Stevens and Ward, was liable to be sold under four out of the five executions in the sheriff's hands ; and the leasehold premises, being an entire property, was necessarily sold altogether. Hence resulted the surplus about which this controversy arises. In ordinary cases, where property seized by a sheriff, is claimed by a stranger, if he stands by and permits it to be sold, he will not be entertained here, upon an application to have the money : nor would the court in such a case, interfere to protect the Sheriff. But in this case, a question has unavoidably arisen between the parties, which can only be settled on this motion to amerce the Sheriff, or in an action at law against him. And I see no reason, since the parties and all

the facts are now before us, why we should not determine it according to the law and justice of the case.

The first question then, is whether the Sheriff is estopped by his levy and sale, from denying the plaintiff's right to this money? I think not. In an action against him, he would be at liberty to show that the property was subject to prior liens, which had exhausted the proceeds: and I can see no reason why he might not be permitted to show, that he had levied on and sold by mistake, under the plaintiffs' execution, property that was not liable to such seizure and sale.

It is true, if a sheriff seizes and sells property under an execution in favor of A., which he ought to have sold under the execution of B., he cannot apply the money to the satisfaction of B's execution; but must pay it over to A. and remain responsible to B. for his mistake or neglect.

But in such case, the property belonged to the defendant in execution, and was subject to a seizure and sale under either execution. The difference is, that in this case, if we believe the evidence, the property on which this money was raised, was not liable to be sold under the execution of these plaintiffs; and satisfied as I am, that the property in this case, was lawfully vested in Stevens and Ward, before the plaintiffs' execution came to the hands of the Sheriff, I think they are not entitled to the money in court, and that the Sheriff ought not to be amerced.

FORD, WHITE, DAYTON, and NEVIUS, Justices concurred.

*Motion denied.*